ORIGINAL

LODGED

WILLIAM E. KOVACIC
General Counsel

GREGORY A. ASHE
RENATE KINSCHECK
LAURA SCHNEIDER
Federal Trade Commission
600 Pennsylvania Ave., N.W., Room NJ-2122
Washington, D.C. 20580
(202) 326-3719 voice; (202) 326-2558 fax

THOMAS J. SYTA - Cal Bar # 116286
Local counsel
Federal Trade Commission
10877 Wilshire Blvd., Suite 700
Los Angeles, CA 90024
(310) 824-4324 voice
(310) 824-4380 fax

Attorneys for Plaintiff
Federal Trade Commission

FILED
CLERK, U S DISTRICT COURT

OCT - 7 2004

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

FEDERAL TRADE COMMISSION,
            Plaintiff,

        v.

PROMENADE COMMUNICATIONS LLC, et al.,

            Defendants.

CV04-6657 SVW FMOx

**STIPULATED FINAL JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND MONETARY SETTLEMENT**

Plaintiff, the Federal Trade Commission ("Commission"), has filed its complaint for permanent injunction and other relief pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, the Telemarketing and Consumer

Page 1 of 29

DOCKETED ON CM

OCT - 8 2004

BY _____ 009

Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101 *et seq.,* and the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. §§ 1693-1693r, charging Defendants with violating Section 5(a) of the FTC Act, 15 U.S.C. § 45(a); the Commission's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310; and Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b).

Plaintiff Federal Trade Commission and Defendants Promenade Communications LLC (a California corporation), Promenade Membership Services LLC, Promenade Communications LLC (a Florida corporation), Archetype Communications Corporation, Privco LLC, International Health Group LLC, Travelquest International LLC, Global Media Holdings LTD, and Grail Holdings have agreed to the entry of this Stipulated Final Judgment and Order for Permanent Injunction and Monetary Settlement ("Order") by this Court to resolve all matters of dispute between the Commission and Defendants with respect to the conduct alleged in the complaint in this action. As consideration for not being named as defendants in this action, the Related Parties, Michael Reinstein and Brian Kelly, have agreed to the entry of this Order by this Court to resolve all matters of dispute between the Commission and the Related Parties with respect to conduct alleged in the Complaint.

**NOW, THEREFORE,** Plaintiff Federal Trade Commission, Defendants and Related Parties having requested the Court to enter this Order,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** as follows:

### FINDINGS

1. This Court has jurisdiction of the subject matter of this action and has jurisdiction over Defendants. The Related Parties, although not named as defendants in this action,

Page 2 of 29

consent to the jurisdiction of this Court for purposes of entry of this Order and agree to be bound by the terms herein.

2. Venue for this action is proper in the Central District of California.

3. The activities of Defendants and the Related Parties are in or affecting commerce, as defined in the FTC Act, 15 U.S.C. § 44.

4. The Complaint states a claim upon which relief may be granted against Defendants under Sections 5(a), 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 45(a), 53(b) and 57b; the Telemarketing Act, 15 U.S.C. §§ 6101 *et seq.,* the TSR, 16 C.F.R. Part 310; and EFTA, 15 U.S.C. §§ 1693-1693r.

5. Defendants and Related Parties waive all rights that may arise under the Equal Access to Justice Act, 28 U.S.C. § 2412, *amended by* Pub. L. 104-121, 110 Stat. 847, 863-64 (1996). Defendants and Related Parties also waive all rights to seek judicial review of, or otherwise challenge or contest the validity of, this Order. Defendants also waive service of a summons.

6. The Commission, Defendants, and the Related Parties stipulate and agree to this Order, without trial or final adjudication of any issue of fact or law, to settle and resolve all matters in dispute arising from the Complaint to the date of entry of this Order. Defendants and the Related Parties do not admit any of the allegations set forth in the Complaint, other than jurisdictional facts.

7. Entry of this Order is in the public interest.

## DEFINITIONS

1.  "Defendants" means Promenade Communications LLC (a California corporation), Promenade Membership Services LLC, Promenade Communications LLC (a Florida corporation), Archetype Communications Corporation, Privco LLC, International Health Group LLC, Travelquest International LLC, Global Media Holdings LTD, and Grail Holdings, and their successors and assigns.

2.  "Related Parties" means Michael Reinstein and Brian Kelly.

3.  "Assisting others" means knowingly providing any of the following services to any person or entity:  (a) performing customer service functions for any person or entity, including, but not limited to, receiving or responding to consumer complaints; (b) formulating or providing, or arranging for the formulation or provision of, any telephone sales script or any other marketing material for any person or entity; (c) performing marketing services of any kind for any person or entity, or (d) providing credit card merchant processing accounts, or otherwise providing access to a billing and collection system (such as a credit card, checking, savings, share or similar account, utility bill, telephone bill, mortgage loan account or debit card); or causing any charges to be made to such an account or utilizing such a system.

4.  "Billing information" means any data that enables any person to access a consumer's account, such as a credit card, checking, savings, share or similar account, utility bill, mortgage loan account, or debit card.

5.    "Charge" means any amount charged or debited to a consumer's credit card, checking, savings, share or similar account, utility bill, telephone bill, mortgage loan account or debit card, or any similar form of collecting money from a consumer.

6.    "Inbound" telemarketing call means a telemarketing call initiated by a consumer to a telemarketer.

7.    "Membership service" means any arrangement whereby persons who purportedly agree to the arrangement (often called "members") receive specified benefits over a period of time, including but not limited to, travel benefits, health benefits, home protection, credit card protection, legal services and discounts on goods and services.

8.    "Negative option feature" means, in an offer or agreement to sell or provide any goods or services, a provision under which the consumer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer.  Agreements with negative option features include, but are not limited to: (i) free-to-pay conversion agreements in which the consumer receives a product or service for free for an initial period and will incur an obligation to pay for the product or service if he or she does not take affirmative action to cancel before the end of that period; (ii) continuity plans, in which, subsequent to the consumer's agreement to the plan, the seller or provider automatically ships goods to a consumer unless the consumer notifies the seller or provider within a certain time not to ship the goods; and (iii) automatic renewal plans, in which the seller automatically renews the agreement and charges the consumer unless the consumer cancels before the renewal.

9.    "Outbound" telemarketing call means a telemarketing call initiated by a telemarketer.

Page 5 of 29

10. "Preacquired account information" means any information that enables a seller or telemarketer to cause a charge to be placed against a consumer's account without obtaining the account number directly from the consumer during the telemarketing transaction pursuant to which the account will be charged.

11. "Telemarketing" means any business activity (which includes, but is not limited to, initiating or receiving telephone calls, managing others who initiate or receive telephone calls, operating an enterprise that initiates or receives telephone calls, owning an enterprise that initiates or receives telephone calls, or otherwise participating as an officer, director, employee or independent contractor in an enterprise that initiates or receives telephone calls) that involves attempts to induce consumers to purchase any item, good, service, partnership interest, trust interest or other beneficial interest, or to enter a contest for a prize, by means of telephone sales presentations, either exclusively or in conjunction with the use of other forms of marketing; **provided, however,** that the term "telemarketing" does not include transactions that are not completed until after a face-to-face contact between the seller or solicitor and the consumers solicited; **provided further**, that for the purposes of Part III of this Order, the definition of telemarketing will conform to that of 16 C.F.R. § 310.2.

12. "Upselling" means soliciting the purchase of goods or services following an initial transaction during a single telephone call. The upsell is a separate telemarketing transaction, not a continuation of the initial transaction. An "external upsell" is a solicitation made by or on behalf of a seller different from the seller in the initial transaction, regardless of whether the initial transaction and the subsequent solicitation

are made by the same telemarketer. An "internal upsell" is a solicitation made by or on behalf of the same seller as in the initial transaction, regardless of whether the initial transaction and subsequent solicitation are made by the same telemarketer.

## I.

## PROHIBITED BUSINESS PRACTICES

**IT IS THEREFORE ORDERED** that Defendants, Related Parties, and their officers, agents, employees, all other persons or entities within the scope of Fed.R.Civ.P. 65, and all those persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any entity, corporation, subsidiary, division, or other device, in connection with the advertising, promoting, marketing, offering for sale, sale, or distribution of any membership service or the telemarketing of any goods or services in or affecting commerce, are hereby permanently restrained and enjoined from:

A.    Misrepresenting, expressly or by implication, any material fact, including but not limited to:

1.    that a good or service is offered at "no obligation" or words of similar import, denoting or implying the absence of any obligation on the part of the recipient of the offer to affirmatively act in order to avoid charges if, in fact, a charge will be submitted for payment at the end of a trial period unless the consumer takes affirmative action to cancel;

2.    (i) the amount that a consumer will be charged or billed for any goods or services, (ii) that a consumer will not be charged or billed for any goods or services, (iii)

Page 7 of 29

the timing or manner of any charge or bill, or (iv) that a consumer will not be charged or billed without the consumer's authorization;

3.    the length of any trial period in any membership service that consumers will receive before they are automatically charged or billed for such membership service;

4.    the terms and conditions of Defendants' or Related Parties' policies and practices regarding cancellations and refunds, including but not limited to, that (i) consumers who accept Defendants' or Related Parties' offer of a membership can easily cancel within the trial period and avoid charges, and (ii) consumers will be able to obtain prompt refunds of fees paid to Defendants or Related Parties; and

5.    the purpose for which the Defendants or Related Parties will use a consumer's billing information;

B.    Failing to disclose clearly and conspicuously that a purpose of a telemarketing call is to sell goods or services, promptly, at the beginning of all inbound telemarketing calls in response to any advertisement, promotion or other solicitation that does not clearly and conspicuously disclose the sales purpose of the solicitation.

## II.

### PROHIBITED BUSINESS PRACTICES REGARDING SUBMISSION OF BILLING INFORMATION WITHOUT EXPRESS INFORMED CONSENT

**IT IS FURTHER ORDERED** that Defendants, Related Parties, and their officers, agents, employees, all other persons or entities within the scope of Fed.R.Civ.P. 65, and all those persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any entity,

Page 8 of 29

corporation, subsidiary, division, or other device, in connection with the telemarketing of any goods or services in or affecting commerce, are hereby permanently restrained and enjoined from directly or indirectly causing billing information to be submitted for payment without the express informed consent of the consumer, which shall include express informed consent to be charged for the goods or services and to be charged using a specified billing account. **Provided, however**, that the following requirements must be met to evidence express informed consent:

A.    Defendants and Related Parties must clearly and conspicuously disclose, before the consumer consents to any purchase, all material conditions, limitations and restrictions to purchase, receive, or use the goods or services that are subject to the offer (including any promoted associated "free" goods or services), including but not limited to the following:

1.    the dollar amount of the first payment and when it will be charged or become due; the dates or frequency (*e.g.,* monthly, quarterly) of all subsequent charges or payment(s); and the dollar amount or range of costs of all subsequent charges or payments;

2.    if a charge will be submitted for payment at the end of a trial period unless the consumer cancels: this fact; the length of the trial period; the specific steps in which a cancellation request must be submitted; and the date or time period by which a cancellation request must be received to avoid a charge; and

3.    if the seller automatically ships goods to a consumer or automatically renews a membership, subscription or agreement for goods or services that is offered on a periodic basis, unless the consumer notifies the seller within a certain time not to ship or renew: this fact; the length of the subsequent renewal period; the manner in which a

Page 9 of 29

notice not to ship or renew must be submitted; the date or time period by which a notice not to ship or renew must be received to avoid shipment or renewal (*e.g.*, two weeks after consumer advised of an upcoming shipment); and either a telephone number or address to which such a notice may be directed; and

B.     In connection with the telemarketing of any goods or services pursuant to an offer or agreement with a negative option feature:

1.     Defendants and Related Parties must obtain the consumer's express written agreement to purchase the goods or services and authorization to submit a charge on a specified billing account for payment, that includes: (1) all of the information required to be disclosed pursuant to Part IIA of this Order, and (2) the consumer's signature (the term "signature" includes a verifiable electronic or digital form of signature, to the extent such form of signature is recognized as a valid signature under applicable federal law or state contract law); or

2.     Defendants and Related Parties must obtain the consumer's express oral authorization to purchase the goods or services that are the subject of the telemarketing transaction and the consumer's authorization to submit a charge on a specified billing account for payment that is audio-recorded, as follows:

a.     in connection with any telemarketing transaction involving preacquired account information and a negative option feature, the recording must evidence that Defendants or Related Parties have obtained from the consumer, during that transaction, at a

Page 10 of 29

minimum, the last four (4) digits of the account number to be charged; and

b.    the recording must evidence that Defendants or Related Parties have complied with Part IIA of this Order and the disclosure requirements of the Telemarketing Sales Rule;

c.    the recording must include the entirety of the transaction;

d.    the recording can be identified and located by either the consumer's name or telephone number; and

e.    a copy of the recording is provided upon request to the consumer, the consumer's bank, credit card company or other billing entity, state attorney general or consumer protection agency and the Commission.

## III.

## VIOLATIONS OF TELEMARKETING SALES RULE

**IT IS FURTHER ORDERED** that Defendants, Related Parties, and their officers, agents, employees, all other persons or entities within the scope of Fed.R.Civ.P. 65, and all those persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any entity, corporation, subsidiary, division, or other device, are hereby permanently restrained and enjoined from violating any provision of the Telemarketing Sales Rule, 16 C.F.R. Part 310, as in effect now or as it may be amended.

## IV.

## PROHIBITION ON RENEWALS OF CURRENT OR PAST MEMBERSHIPS

**IT IS FURTHER ORDERED** that Defendants, Related Parties, and their officers, agents, employees, all other persons or entities within the scope of Fed.R.Civ.P. 65, and all those persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any entity, corporation, subsidiary, division, or other device, are hereby permanently restrained and enjoined from causing any charges to be made or any payments to be billed to a consumer, or causing collection of, or attempts to collect, payment, directly or indirectly, from a consumer, for any renewal of any membership services offered or provided to consumers by any Defendant or Related Party or by any entity owned or controlled directly or indirectly by any Defendant or Related Party, where the purported authorization of the membership service occurred prior to the effective date of this Order, without first obtaining from the consumer, within sixty (60) days prior to the date on which the consumer is charged or billed for such renewal, express informed consent for such renewal that complies with the requirements of Part II this Order; **provided, however,** that prior to sending any written materials to consumers to obtain the express informed consent required by this Part IV, Defendants and Related Parties shall obtain written approval for such material from counsel for the Commission.

## V.

## VIOLATIONS OF THE ELECTRONIC FUND TRANSFER ACT

**IT IS FURTHER ORDERED** that Defendants, Related Parties, and their officers, agents, employees, all other persons or entities within the scope of Fed.R.Civ.P. 65, and all those

Page 12 of 29

persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any entity, corporation, subsidiary, division or other device, are hereby permanently restrained and enjoined from:

A.     in connection with any consumer who is enrolled into any plan or program with a negative option feature subsequent to the date of this Order and who uses a debit card or other means of electronic funds transfer,

     i.     failing to obtain written authorization for Preauthorized Electronic Fund Transfers from a consumer's account before initiating any Preauthorized Electronic Fund Transfer, as required by Section 907(a) of the Electronic Funds Transfer Act, 15 U.S.C. § 1693c(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b), as more fully set out in Section 205.10 of the Federal Reserve Board's Official Staff Commentary to Regulation E, 12 C.F.R. § 205, Supp. I, or as they may hereafter be amended; and

     ii.     failing to maintain procedures reasonably adapted to avoid an unintentional failure to obtain written authorization for a Preauthorized Electronic Fund Transfer, as required in Section 205.10 of the Federal Reserve Board's Official Staff Commentary to Regulation E, 12 C.F.R. § 205, Supp. I, or as they may hereafter be amended; and

B.     in connection with any consumer who was enrolled into any plan or program with a negative option feature prior to the date of this Order and who indicated the use of a credit card

when in fact a debit card was used, if Defendants or Related Parites later find that the card used is a debit card, failing to obtain written authorization for Preauthorized Electronic Fund Transfers from the consumer's account as soon as reasonably possible, or ceasing to debit the consumer's account, as required by Section 907(a) of the Electronic Funds Transfer Act, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b), as more fully set out in Section 205.10 of the Federal Reserve Board's Official Staff Commentary to Regulation E, 12 C.F.R. § 205, Supp. I, or as they may hereafter be amended.

## VI.

## HONORING REFUND PROMISES

**IT IS FURTHER ORDERED** that Defendants, Related Parties, and their officers, agents, employees, all other persons or entities within the scope of Fed.R.Civ.P. 65, and all those persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any entity, corporation, subsidiary, division, or other device, in connection with the advertising, promoting, marketing, offering for sale, sale, or distribution of any membership service or the telemarketing of any goods or services in or affecting commerce, are hereby permanently restrained and enjoined from:

A.      With respect to any good or service offered with a money-back guarantee by Defendants or Related Parties, failing to provide, within seven (7) business days of a Defendant's or Related Party's receipt of a refund request, a full refund of the purchase price of the good or service, including any shipping costs, insurance, handling, or any other fee or charge paid by the consumer; **provided, however**, that Defendants and Related Parties may set terms and conditions

Page 14 of 29

for such money-back guarantee (such as a time limit within which consumers must request the money back, or a non-refundable shipping and handling charge) only if Defendants and Related Parties have disclosed such terms and conditions, clearly and conspicuously and in close proximity to the offer, and

B.    Failing to honor any representations made by Defendants or Related Parties regarding refunds.

## VII.

## MAINTAINING ACCESSIBILITY TO TELEPHONE PERSONNEL

**IT IS FURTHER ORDERED** that Defendants, Related Parties, and their officers, agents, employees, all other persons or entities within the scope of Fed.R.Civ.P. 65, and all those persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any entity, corporation, subsidiary, division, or other device, are hereby permanently restrained and enjoined, in connection with the advertising, promoting, marketing, offering for sale, sale, or distribution of any membership service or the telemarketing of any goods or services in or affecting commerce, from failing to take all reasonable steps necessary to ensure reasonable consumer accessibility to personnel manning any telephone number that Defendants or Related Parties provide to consumers for cancellation of trial memberships or obtaining of refunds.

## VIII.

## MONITORING OF EMPLOYEES & AGENTS

**IT IS FURTHER ORDERED** that Defendants and Related Parties, in connection with the advertising, promoting, marketing, offering for sale, sale, or distribution of any membership

Page 15 of 29

service or the telemarketing of any goods or services in or affecting commerce, are hereby permanently enjoined and restrained from:

A.    Failing to take reasonable steps sufficient to monitor and ensure that all Defendants' and Related Parties' agents, representatives, employees, independent contractors and contract telemarketers comply with Parts I through VII of this Order; and

B.    Failing to investigate and resolve promptly any consumer complaint or request for refund received by Defendants, Related Parties, their officers, agents, employees, all other persons or entities within the scope of Fed.R.Civ.P. 65, and those persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, and to notify the consumer of the resolution of the complaint or request and the reason therefore.

## IX.

## MONETARY RELIEF

**IT IS FURTHER ORDERED** that:

A.    Judgment is hereby entered against Defendants, jointly and severally, in the amount of TWO MILLION FOUR HUNDRED THOUSAND DOLLARS ($2,400,000); **provided, however,** that this judgment will be suspended (1) upon payment to the Commission or its designated agent, within five (5) days of the date of entry of this judgment, the amount of $113,000, which payment must be by wire transfer pursuant to instructions provided by the Commission and (2) as long as the Court makes no finding, as provided in Part X of this Order,

that any Defendant materially misrepresented or omitted the nature, existence or value of any asset.

B. All funds paid pursuant to this Part shall be deposited into a fund administered by the Commission or its agent to be used for equitable relief, including but not limited to consumer redress and any attendant expenses for the administration of any redress fund. In the event that direct redress to consumers is wholly or partially impracticable or funds remain after redress is completed, the Commission may apply any remaining funds for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Complaint. Any funds not used for such equitable relief shall be deposited to the U.S. Treasury as equitable disgorgement. Defendants and Related Parties shall have no right to challenge the Commission's choice of remedies or the manner of distribution.

C. Defendants and Related Parties acknowledge and agree that all money paid pursuant to this Order is irrevocably paid to the Commission for purposes of settlement between the parties, and Defendants and Related Parties relinquish all rights, title, and interest to such money. Defendants and Related Parties shall make no claim or demand for return of the funds, directly or indirectly, through counsel or otherwise, and in the event of bankruptcy of any Defendant or Related Party, such Defendant or Related Party acknowledges that the funds are not part of the debtor's estate, nor does the estate have any claim or interest therein.

D. Defendants are hereby required, in accordance with 31 U.S.C. § 7701, to furnish to the Commission their respective taxpayer identifying numbers (social security numbers or

employer identification numbers), which will be used for purposes of collecting and reporting on any delinquent amount arising out of such Defendant's relationship with the government

E.     Defendants and Related Parties waive any right to contest any of the allegations in the Complaint in any subsequent litigation to collect amounts due pursuant to this Order, including but not limited to a nondischargeability complaint in any bankruptcy proceeding; and

F.     The judgment entered pursuant to this Part IX is equitable monetary relief, solely remedial in nature, and not a fine, penalty, punitive assessment or forfeiture.

## X.

## **RIGHT TO REOPEN**

**IT IS FURTHER ORDERED** that:

A.     The Commission's agreement to this Order is expressly premised on the truthfulness, accuracy and completeness of the corporate financial statements submitted to the Commission in December 2003 and January 2004.  If, upon motion by the Commission, the Court finds that the financial statement of any Defendant contains any material misrepresentation or omission, the suspended judgment entered in Part IX of this Order shall become immediately due and payable as to that Defendant (less any amounts turned over pursuant to Part IX.A of this Order); **provided, however**, that in all other respects this Order shall remain in full force and effect unless otherwise ordered by the Court;

B.     The Commission's agreement not to name Related Parties as defendants in this action is expressly premised on the truthfulness, accuracy and completeness of sworn individual financial statements and written information relating to their role in the conduct alleged in the Complaint that were submitted to the Commission in March 2004.  If the Commission

determines that any such financial statement or written information contains any material misrepresentation or omission, the Commission may move the Court to reopen the matter to name the appropriate Related Party as a defendant and request modification of this Order; **provided, however**, that in all other respects this Order shall remain in full force and effect unless otherwise ordered by the Court;

C. Any proceedings instituted under this Part X shall be in addition to, and not in lieu of, any other civil or criminal remedies as may be provided by law, including any other proceedings that the Commission may initiate to enforce this Order. For purposes of this Part X, Defendants and Related Parties waive any right to contest any of the allegations in the Complaint.

## XI.

## COOPERATION WITH COMMISSION COUNSEL

**IT IS FURTHER ORDERED** that Related Parties shall, in connection with this action or any concurrent or subsequent civil investigations related to or associated with the transactions or the occurrences that are the subject of the Complaint, cooperate in good faith with the Commission, and appear at such places and times as the Commission reasonably requests, after written notice, for interviews, conferences, pretrial discovery, review of documents, and for such other matters as may be reasonably requested by the Commission. If requested in writing by the Commission, Related Parties shall appear and provide truthful testimony in any civil trial, deposition or other proceeding related to or associated with the transactions or the occurrences that are the subject of the Complaint without the service of a civil investigative demand or subpoena.

## XII.

### DISTRIBUTION OF ORDER

**IT IS FURTHER ORDERED** that, for a period of five (5) years from the date of entry of this Order,

A.     Defendants shall each deliver (1) a copy of this Order to all principals, officers, directors, and managers, and (2) a copy of the Summary of the Order attached as Appendix A to all employees, agents, and representatives who engage in conduct related to the subject matter of the Order.

B.     Related Parties, in connection with any business where (1) such Related Party controls, directly or indirectly, the business or has a majority ownership interest, and (2) the business engages in, or assists others engaged in, the advertising, promoting, marketing, offering for sale, sale, or distribution of any membership service or the telemarketing of any goods or services, shall each deliver (1) a copy of this Order to all principals, officers, directors, and managers of that business, and (2) a copy of the Summary of the Order attached as Appendix A to all employees, agents, and representatives who engage in conduct related to the subject matter of the Order.

C.     For any business where either Related Party is not a controlling person but otherwise engages in, or assists others engaged in, the advertising, promoting, marketing, offering for sale, sale, or distribution of any membership service or the telemarketing of any goods or services, such Related Party shall delivery a copy of this Order to all principals and managers of such business before engaging in such conduct.

D.     For current personnel, delivery required by this Part XII shall be within (5) days of service of this Order upon Defendants and Related Parties.  For new personnel, delivery shall occur prior to them assuming their responsibilities.  Defendants and Related Parties must secure a signed and dated statement acknowledging receipt of the Order, within thirty days of delivery, from all persons receiving a copy of the Order pursuant to this Part XII.

## XIII.

## RECORD-KEEPING PROVISIONS

**IT IS FURTHER ORDERED** that, for a period of eight (8) years from the date of entry of this Order, each Defendant, in connection with any business where such Defendant is the majority owner or otherwise controls, directly or indirectly, the business, and each Related Party, in connection with any business where (1) such Related Party is the majority owner or otherwise controls, directly or indirectly, the business and (2) the business is engaged in or assists others engaged in the advertising, promoting, marketing, offering for sale, sale, or distribution of any membership service or the telemarketing of any goods or services, and their agents, employees, officers, corporations, successors, and assigns, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby restrained and enjoined from failing to create and retain the following records:

A.     Accounting records that reflect the cost of goods or services sold, revenues generated, and the disbursement of such revenues;

B.     Personnel records accurately reflecting:  the name, address, and telephone number of each person employed in any capacity by such business, including as an independent

Page 21 of 29

contractor; that person's job title or position; the date upon which the person commenced work; and the date and reason for the person's termination, if applicable;

C. Customer files containing the names, addresses, phone numbers, dollar amounts paid, quantity of items or services purchased, and description of items or services purchased, to the extent such information is obtained in the ordinary course of business;

D. Complaint and refund requests (whether received directly, indirectly or through any third party) and any responses to those complaints or requests;

E. Copies of all sales scripts, training materials, advertisements, or other marketing materials, and records that accurately reflect the time periods during which such materials were used and the persons and business entities that used such materials;

F. For each of Defendants' or Related Parties' credit or debit card merchant processing accounts:

1. A copy of the contract providing the account;

2. Records that accurately reflect the name, address and telephone number of the acquirer bank, and its credit card processor(s),

3. Copies of correspondence from VISA, MasterCard, any similar entity, and any acquirer bank or credit card processor describing a finding by such entities that any Defendant or Related Party has incurred excessive chargebacks on such account, or that any Defendant or Related Party has engaged in any other fraud, abuse or questionable activity with respect to such account;

G.      Copies of any contracts providing any Defendant or Related Party with access to a billing and collection system, such as a credit card, checking, savings, share or similar account, utility bill, telephone bill, mortgage loan account or debit card;

H.      Each tape recording of a telemarketing call made pursuant to Part II of this Order;

I.      For each of Defendants' and Related Parties' contract telemarketers:

1.      A copy of the contract and any amendments thereto between such contract telemarketer and any Defendant or Related Party;

2.      Records that accurately reflect the name, address and telephone number of such contract telemarketer;

3.      Records that accurately reflect all payments made to such contract telemarketer by any Defendant or Related Party, all payments made to any Defendant or Related Party by such contract telemarketer, the reasons for such payments, and how such payments were calculated; and

4.      Copies of any correspondence with Defendants' and Related Parties' contract telemarketers or any person or entity that relate to complaints from consumers, government entities or any other parties about the sales, billing or collection practices or any questionable activities of Defendants' or Related Parties' contract telemarketers; and

J.      Copies of each acknowledgement of receipt of Order required to be obtained pursuant to Part XII of this Order.

## XIV.

### COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that, in order that compliance with the provisions of this Order may be monitored:

A.    For a period of five (5) years from the date of entry of this Order,

1.    Each Related Party shall notify the Commission of the following:

a.    Any changes in his residence, mailing addresses, and telephone numbers, within ten (10) days of the date of such change;

b.    Any changes in his employment status (including self-employment) within ten (10) days of the date of such change. Such notice shall include the name and address of each business that he is affiliated with, employed by, or performs services for; a statement of the nature of the business; and a statement of his duties and responsibilities in connection with the business;

c.    Any changes in his name or use of any aliases or fictitious names; and

2.    Defendants shall notify the Commission of any changes in corporate structure that may affect compliance obligations arising under this Order, including but not limited to a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor corporation; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; the filing of a bankruptcy petition; or a change in the corporate name or address, at least thirty (30)

days prior to such change, **provided, however**, that, with respect to any proposed change in the corporation about which the Defendant learns less than thirty (30) days prior to the date such action is to take place, Defendant shall notify the Commission as soon as is practicable after obtaining such knowledge.

B. One hundred eighty (180) days after the date of entry of this Order, each Defendant and Related Party shall provide a written report to the Commission, sworn to under penalty of perjury, setting forth in detail the manner and form in which they have complied and are complying with this Order. This report shall include, but not be limited to:

1. Any changes required to be reported pursuant to subpart A above; and

2. A copy of each acknowledgment of receipt of this Order obtained pursuant to Part XII;

C. For the purposes of this Order, Defendants and Related Parties shall, unless otherwise directed by the Commission's authorized representatives, mail all written notifications to the Commission to:

> Associate Director for Enforcement
> Federal Trade Commission
> 600 Pennsylvania Avenue, N.W.
> Washington D.C. 20580
> Re:  FTC v. Promenade Communications, LLC, *et al.*

D. For purposes of the compliance reporting required by this Part, the Commission is authorized to communicate directly with Defendants and Related Parties.

## XV.

## COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring and investigating compliance with any provision of this Order,

A.      Within fifteen (15) days of receipt of written notice from a representative of the Commission, Defendants and Related Parties each shall submit additional written reports, sworn to under penalty of perjury; produce documents for inspection and copying; appear for deposition; and/or provide entry during normal business hours to any business location in such Defendant's or Related Party's possession or direct or indirect control to inspect the business operation;

B.      In addition, the Commission is authorized to monitor compliance with this Order by all other lawful means, including but not limited to the following:

1.      obtaining discovery from any person, without further leave of court, using the procedures prescribed by Fed. R. Civ. P. 30, 31, 33, 34, 36, and 45;

2.      posing as consumers and suppliers to: Defendants, Related Parties, their employees, or any other entity managed or controlled in whole or in part by any Defendant or Related Party, without the necessity of identification or prior notice; **Provided, however,** that nothing in this Order shall limit the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1, to obtain any documentary material, tangible things, testimony, or information relevant to unfair or deceptive acts or practices in or affecting commerce (within the meaning of 15 U.S.C. § 45(a)(1)).

C. Defendants and Related Parties shall permit representatives of the Commission to interview any employer, consultant, independent contractor, representative, agent, or employee who has agreed to such an interview, relating in any way to any conduct subject to this Order. The person interviewed may have counsel present.

## XVI

## ACKNOWLEDGMENT OF RECEIPT OF ORDER

**IT IS FURTHER ORDERED** that within five (5) business days after entry of this Order, each Defendant and Related Party shall submit to the Commission a truthful sworn statement acknowledging receipt of this Order.

## XVII

## RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter, including jurisdiction over of each Related Party, for purposes of construction, modification and enforcement of this Order.

**STIPULATED AND AGREED TO BY:**

_____
PROMENADE COMMUNICATIONS, LLC (a California corporation), Defendant

_____
PROMENADE MEMBERSHIP SERVICES, LLC, Defendant

_____
PROMENADE COMMUNICATIONS, LLC (a Florida corporation), Defendant

_____
ARCHETYPE COMMUNICATIONS CORPORATION, Defendant

Page 27 of 29

IT IS SO ORDERED

Dated _____

_____
United States District Judge

PRIVCO LLC, Defendant

INTERNATIONAL HEALTH GROUP, LLC, Defendant

TRAVELQUEST INTERNATIONAL LLC, Defendant

GLOBAL MEDIA HOLDINGS LTD, Defendant

GRAIL HOLDINGS, Defendant

MICHAEL REINSTEIN, Non-Defendant Related Party

BRIAN KELLY, Non-Defendant Related Party

LINDA A. GOLDSTEIN
WILLIAM HEBERER
Manatt, Phelps & Phillips, LLP

Attorneys for Defendants and Related Parties

_____

GREGORY A. ASHE
RENATE KINSCHECK
LAURA SCHNEIDER
Federal Trade Commission
Washington, D.C.

THOMAS J. SYTA
Federal Trade Commission
Los Angeles, CA

Attorneys for Plaintiff

**SO ORDERED**, this _____ day of _____, 2004.

UNITED STATES DISTRICT JUDGE

**APPENDIX A**

SUMMARY OF COURT ORDER ENTERED IN
<u>FTC V. PROMENADE, ET AL</u>
ON [INSERT THE DATE OF THE ORDER'S ENTRY]

DEFINITIONS

1.    "Order" means the Stipulated Final Judgment and Order

for Permanent Injunction and Monetary Settlement, entered on

_____, 2004, in the case <u>FTC v. Promenade</u>

<u>Communications, LLC, et al.</u>, Case No. _____ (C.D. Cal.).

2.    "Defendants" means, unless otherwise specified,

Promenade Communications LLC (a California corporation),

Promenade Membership Services LLC, Promenade Communications LLC

(a Florida corporation), Archetype Communications Corporation,

Privco LLC, International Health Group LLC, Travelquest

International LLC, Global Media Holdings LTD, and Grail Holdings

, and their successors and assigns.

3.    "Related Parties" means Michael Reinstein and Brian

Kelly

4.    "Assisting others" means knowingly providing any of the

following services to any person or entity:   (a) performing

customer service functions for any person or entity, including,

but not limited to, receiving or responding to consumer

complaints; (b) formulating or providing, or arranging for the

formulation or provision of, any telephone sales script or any

other marketing material for any person or entity; (c) performing

Page 1 of 17

marketing services of any kind for any person or entity, or (d) providing credit card merchant processing accounts, or otherwise providing access to a billing and collection system (such as a credit card, checking, savings, share or similar account, utility bill, telephone bill, mortgage loan account or debit card); or causing any charges to be made to such an account or utilizing such a system.

5.    "Billing information" means any data that enables any person to access a consumer's account, such as a credit card, checking, savings, share or similar account, utility bill, mortgage loan account, or debit card.

6.    "Charge" means any amount charged or debited to a consumer's credit card, checking, savings, share or similar account, utility bill, telephone bill, mortgage loan account or debit card, or any similar form of collecting money from a consumer.

7.    "Inbound" telemarketing call means a telemarketing call initiated by a consumer to a telemarketer.

8.    "Membership service" means any arrangement whereby persons who purportedly agree to the arrangement (often called "members") receive specified benefits over a period of time, including but not limited to, travel benefits, health benefits, home protection, credit card protection, legal services and discounts on goods and services.

9. "Negative option feature" means, in an offer or agreement to sell or provide any goods or services, a provision under which the consumer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer. Agreements with negative option features include, but are not limited to: (i) free-to-pay conversion agreements in which the consumer receives a product or service for free for an initial period and will incur an obligation to pay for the product or service if he or she does not take affirmative action to cancel before the end of that period; (ii) continuity plans, in which, subsequent to the consumer's agreement to the plan, the seller or provider automatically ships goods to a consumer unless the consumer notifies the seller or provider within a certain time not to ship the goods; and (iii) automatic renewal plans, in which the seller automatically renews the agreement and charges the consumer unless the consumer cancels before the renewal.

10. "Outbound" telemarketing call means a telemarketing call initiated by a telemarketer.

11. "Preacquired account information" means any information that enables a seller or telemarketer to cause a charge to be placed against a consumer's account without obtaining the account number directly from the consumer during the telemarketing transaction pursuant to which the account will be charged.

12.   "Telemarketing" means any business activity (which includes, but is not limited to, initiating or receiving telephone calls, managing others who initiate or receive telephone calls, operating an enterprise that initiates or receives telephone calls, owning an enterprise that initiates or receives telephone calls, or otherwise participating as an officer, director, employee or independent contractor in an enterprise that initiates or receives telephone calls) that involves attempts to induce consumers to purchase any item, good, service, partnership interest, trust interest or other beneficial interest, or to enter a contest for a prize, by means of telephone sales presentations, either exclusively or in conjunction with the use of other forms of marketing; **provided, however,** that the term "telemarketing" does not include transactions that are not completed until after a face-to-face contact between the seller or solicitor and the consumers solicited; **provided further**, that for the purposes of Part III of the Order, the definition of telemarketing will conform to that of 16 C.F.R. § 310.2.

13.   "Upselling" means soliciting the purchase of goods or services following an initial transaction during a single telephone call.  The upsell is a separate telemarketing transaction, not a continuation of the initial transaction.  An "external upsell" is a solicitation made by or on behalf of a

seller different from the seller in the initial transaction, regardless of whether the initial transaction and the subsequent solicitation are made by the same telemarketer. An "internal upsell" is a solicitation made by or on behalf of the same seller as in the initial transaction, regardless of whether the initial transaction and subsequent solicitation are made by the same telemarketer.

**NOTE: Each of the following Order provisions applies to Defendants, Related Parties, and their officers, agents, employees, and attorneys, and all those persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any entity, corporation, subsidiary, division, or other device. The effective date of the Order is the date the Order was entered by the Court.**

**PROHIBITED BUSINESS PRACTICES**
**PART I OF THE ORDER**

Defendants and Related Parties are permanently restrained and enjoined from making, or causing or assisting others to make, expressly or by implication, any false or misleading representation in connection with the advertising, promoting, marketing, offering for sale, sale, or distribution of any membership service or the telemarketing of any goods or services in or affecting commerce, including but not limited to:

A.    Misrepresenting, expressly or by implication, any material fact, including but not limited to:

1.    that a good or service is offered at "no obligation" or words of similar import, denoting or implying the

absence of any obligation on the part of the recipient of the offer to affirmatively act in order to avoid charges if, in fact a charge will be submitted for payment at the end of a trial period unless the consumer takes affirmative action to cancel;

2.   (i) the amount that a consumer will be charged or billed for any goods or services, (ii) that a consumer will not be charged or billed for any goods or services, (iii) the timing or manner of any charge or bill, or (iv) that a consumer will not be charged or billed without the consumer's authorization;

3.   the length of any trial period in any membership service that consumers will receive before they are automatically charged or billed for such membership service;

4.   the terms and conditions of Defendants' or Related Parties' policies and practices regarding cancellations and refunds, including but not limited to, that (i) consumers who accept Defendants' or Related Parties' offer of a membership can easily cancel within the trial period and avoid charges, and (ii) consumers will be able to obtain prompt refunds of fees paid to Defendants or Related Parties; and

5.   the purpose for which the Defendants or Related Parties will use a consumer's billing information;

B.   Failing to disclose clearly and conspicuously that a purpose of a telemarketing call is to sell goods or services, promptly, at the beginning of all inbound telemarketing calls in

response to any advertisement, promotion or other solicitation that does not clearly and conspicuously disclose the sales purpose of the solicitation.

### PROHIBITED BUSINESS PRACTICES REGARDING SUBMISSION OF BILLING INFORMATION WITHOUT EXPRESS INFORMED CONSENT
### PART II OF THE ORDER

Defendants and Related Parties, in connection with the telemarketing of any goods or services in or affecting commerce, are hereby permanently restrained and enjoined from directly or indirectly causing billing information to be submitted for payment without the express informed consent of the consumer, which shall include express informed consent to be charged for the goods or services and to be charged using a specified billing account. **Provided, however**, that the following requirements must be met to evidence express informed consent:

A.     Defendants and Related Parties must clearly and conspicuously disclose, before the consumer consents to any purchase, all material conditions, limitations and restrictions to purchase, receive, or use the goods or services that are subject to the offer (including any promoted associated "free" goods or services), including but not limited to the following:

1.     the dollar amount of the first payment and when it will be charged or become due; the dates or frequency (e.g., monthly, quarterly) of all subsequent charges or payment(s); and the dollar amount or range of costs of all subsequent charges or

payments;

2.   if a charge will be submitted for payment at the end of a trial period unless the consumer cancels:  this fact; the length of the trial period; the specific steps in which a cancellation request must be submitted; and the date or time period by which a cancellation request must be received to avoid a charge; and

3.   if the seller automatically ships goods to a consumer or automatically renews a membership, subscription or agreement for goods or services that is offered on a periodic basis, unless the consumer notifies the seller within a certain time not to ship or renew:  this fact; the length of the subsequent renewal period; the manner in which a notice not to ship or renew must be submitted; the date or time period by which a notice not to ship or renew must be received to avoid shipment or renewal (e.g., two weeks after consumer advised of an upcoming shipment); and either a telephone number or address to which such a notice may be directed; and

B.   In connection with the telemarketing of any goods or services pursuant to an offer or agreement with a negative option feature:

1.   Defendants and Related Parties must obtain the consumer's express written agreement to purchase the goods or services and authorization to submit a charge on a specified

Page 8 of 17

billing account for payment, that includes: (1) all of the information required to be disclosed pursuant to Part II.A of the Order, and (2) the consumer's signature (the term "signature" includes a verifiable electronic or digital form of signature, to the extent such form of signature is recognized as a valid signature under applicable federal law or state contract law); or

2.    Defendants and Related Parties must obtain the consumer's express oral authorization to purchase the goods or services that are the subject of the telemarketing transaction and the consumer's authorization to submit a charge on a specified billing account for payment that is audio-recorded, as follows:

a.    in connection with any telemarketing transaction involving preacquired account information and a negative option feature, the recording must evidence that Defendants or Related Parties have obtained from the consumer, during that transaction, at a minimum, the last four (4) digits of the account number to be charged; and

b.    the recording must evidence that Defendants or Related Parties have complied with Part II.A. of the Order and the disclosure requirements of the Telemarketing Sales Rule;

c.    the recording must include the entirety of the transaction;

d.    the recording can be identified and located

by either the consumer's name or telephone number; and

e.    a copy of the recording is provided upon request to the consumer, the consumer's bank, credit card company, or other billing entity, state attorney general or consumer protection agency and the Commission.

### VIOLATIONS OF TELEMARKETING SALES RULE
### PART III OF THE ORDER

Defendants and Related Parties are permanently restrained and enjoined from violating any provision of the Telemarketing Sales Rule, 16 C.F.R. Part 310, as in effect now or as it may be amended.

### PROHIBITION ON RENEWALS OF
### CURRENT OR PAST MEMBERSHIPS
### PART IV OF THE ORDER

Defendants and Related Parties are permanently restrained and enjoined from causing any charges to be made or any payments to be billed to a consumer, or causing collection of, or attempts to collect, payment, directly or indirectly, from a consumer, for any renewal of any membership services offered or provided to consumers by any Defendant or Related Party or by any entity owned or controlled directly or indirectly by any Defendant or Related Party, where the purported authorization of the membership service occurred prior to the effective date of the Order, without first obtaining from the consumer, within sixty (60) days prior to the date on which the consumer is charged or billed for such renewal, express informed consent for such

renewal that complies with the requirements of Part II the Order; **provided, however**, that prior to sending any written materials to consumers to obtain the express informed consent required by this Part IV, Defendants and Related Parties shall obtain written approval for such material from counsel for the Commission.

### VIOLATIONS OF THE ELECTRONIC FUND TRANSFER ACT
### PART V OF THE ORDER

Defendants and Related Parties are hereby permanently restrained and enjoined from:

A.    in connection with any consumer who is enrolled into any plan or program with a negative option feature subsequent to the date of the Order and who uses a debit card or other means of electronic funds transfer,

i.    failing to obtain written authorization for Preauthorized Electronic Fund Transfers from a consumer's account before initiating any Preauthorized Electronic Fund Transfer, as required by Section 907(a) of the Electronic Funds Transfer Act, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b), as more fully set out in Section 205.10 of the Federal Reserve Board's Official Staff Commentary to Regulation E, 12 C.F.R. § 205, Supp. I, or as they may hereafter be amended; and

ii.    failing to maintain procedures reasonably adapted to avoid an unintentional failure to obtain written authorization for a Preauthorized Electronic Fund Transfer, as required in

Section 205.10 of the Federal Reserve Board's Official Staff Commentary to Regulation E, 12 C.F.R. § 205, Supp. I, or as they may hereafter be amended; and

B.   in connection with any consumer who was enrolled into any plan or program with a negative option feature prior to the date of the Order and who indicated the use of a credit card when in fact a debit card was used, if Defendants or Related Parties later find that the card used is a debit card, failing to obtain written authorization for Preauthorized Electronic Fund Transfers from the consumer's account as soon as reasonably possible, or ceasing to debit the consumer's account, as required by Section 907(a) of the Electronic Funds Transfer Act, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b), as more fully set out in Section 205.10 of the Federal Reserve Board's Official Staff Commentary to Regulation E, 12 C.F.R. § 205, Supp. I, or as they may hereafter be amended..

## HONORING REFUND PROMISES
## PART VI OF THE ORDER

Defendants or Related Parties, in connection with the advertising, promoting, marketing, offering for sale, sale, or distribution of any membership service or the telemarketing of any goods or services in or affecting commerce, are hereby permanently restrained and enjoined from:

A.   With respect to any good or service offered with a money-back guarantee by Defendants or Related Parties, failing to

provide, within seven (7) business days of a Defendant's or Related Party's receipt of a refund request, a full refund of the purchase price of the good or service, including any shipping costs, insurance, handling, or any other fee or charge paid by the consumer; **provided, however**, that Defendants and Related Parties may set terms and conditions for such money-back guarantee (such as a time limit within which consumers must request the money back, or a non-refundable shipping and handling charge) only if Defendants and Related Parties have disclosed such terms and conditions, clearly and conspicuously and in close proximity to the offer, and

B.    Failing to honor any representations made by Defendants or Related Parties regarding refunds.

### MAINTAINING ACCESSIBILITY TO TELEPHONE PERSONNEL
### PART VII OF THE ORDER

Defendants and Related Parties are permanently restrained and enjoined, in connection with the advertising, promoting, marketing, offering for sale, sale, or distribution of any membership service or the telemarketing of any goods or services in or affecting commerce, from failing to take all reasonable steps necessary to ensure reasonable consumer accessibility to personnel manning any telephone number that Defendants or Related Parties provide to consumers for cancellation of trial memberships or obtaining of refunds.

### RECORD-KEEPING PROVISIONS

Page 13 of 17

## PART XIII OF THE ORDER

For a period of eight (8) years from the date of entry of the Order, each Defendant, in connection with any business where such Defendant is the majority owner or otherwise controls, directly or indirectly, the business, and each Related Party, in connection with any business where (1) such Related Party is the majority owner or otherwise controls, directly or indirectly, the business and (2) the business is engaged in or assists others engaged in the advertising, promoting, marketing, offering for sale, sale, or distribution of any membership service or the telemarketing of any goods or services, are hereby restrained and enjoined from failing to create and retain the following records:

A.    Accounting records that reflect the cost of goods or services sold, revenues generated, and the disbursement of such revenues;

B.    Personnel records accurately reflecting:  the name, address, and telephone number of each person employed in any capacity by such business, including as an independent contractor; that person's job title or position; the date upon which the person commenced work; and the date and reason for the person's termination, if applicable;

C.    Customer files containing the names, addresses, phone numbers, dollar amounts  paid, quantity of items or services purchased, and description of items or services purchased, to the

Page 14 of 17

extent such information is obtained in the ordinary course of business;

D. Complaint and refund requests (whether received directly, indirectly or through any third party) and any responses to those complaints or requests;

E. Copies of all sales scripts, training materials, advertisements, or other marketing materials, and records that accurately reflect the time periods during which such materials were used and the persons and business entities that used such materials;

F. For each of Defendants' or Related Parties' credit or debit card merchant processing accounts:

1. A copy of the contract providing the account;

2. Records that accurately reflect the name, address and telephone number of the acquirer bank, and its credit card processor(s),

3. Copies of correspondence from VISA, MasterCard, any similar entity, and any acquirer bank or credit card processor describing a finding by such entities that any Defendant or Related Party has incurred excessive chargebacks on such account, or that any Defendant or Related Party has engaged in any other fraud, abuse or questionable activity with respect to such account;

G. Copies of any contracts providing any Defendant or

Page 15 of 17

Related Party with access to a billing and collection system, such as a credit card, checking, savings, share or similar account, utility bill, telephone bill, mortgage loan account or debit card;

H. Each tape recording of a telemarketing call made pursuant to Part II of the Order;

I. For each of Defendants' and Related Parties' contract telemarketers:

1. A copy of the contract and any amendments thereto between such contract telemarketer and any Defendant or Related Party;

2. Records that accurately reflect the name, address and telephone number of such contract telemarketer;

3. Records that accurately reflect all payments made to such contract telemarketer by any Defendant or Related Party, all payments made to any Defendant or Related Party by such contract telemarketer, the reasons for such payments, and how such payments were calculated; and

4. Copies of any correspondence with Defendants' and Related Parties' contract telemarketers or any person or entity that relate to complaints from consumers, government entities or any other parties about the sales, billing or collection practices or any questionable activities of Defendants' or Related Parties' contract telemarketers; and

Page 16 of 17

J.    Copies of each acknowledgement of receipt of Order required to be obtained pursuant to Part XII of the Order.

SCANNED